NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000695
16-JUL-2012
08:07 AM

NO. CAAP-11-0000695

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
RICARDO APOLLONIO, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
WAHIAWĀ DIVISION
(Case No. 1DTC-10-010161)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Defendant-Appellant Ricardo Apollonio (Apollonio) appeals the Notice of Entry of Judgment and/or Order and Plea/Judgment entered on August 23, 2011 in the District Court of the First Circuit, Wahiawā Division (district court).[1]

Apollonio was convicted of Excessive Speeding, in violation of Hawaii Revised Statutes (HRS) § 291C-105(a)(1) and (c)(2) (2007 & Supp. 2011) arising from a citation issued by Officer Robert Sepulveda (Officer Sepulveda) to Apollonio on July 1, 2010 for excessive speeding of 76 miles per hour in a 35-mile-per-hour zone.

On appeal, Apollonio contends that the district court erred in admitting evidence of the laser gun reading without evidence (1) of testing according to the manufacturer's recommended procedures, and that the laser gun was operating

---

[1] The Honorable Lono Lee presided.

properly, (2) of the nature and extent of the officer's training meeting the manufacturer's requirements, and (3) that the laser had been inspected and serviced as required by the manufacturer.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Apollonio's points of error as follows.

Sufficient foundation for admission of the laser gun reading requires evidence: (1) "that the laser gun was tested according to manufacturer recommended procedures[,]" State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009) (formatting altered); and (2) "whether the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer[,]" Assaye, 121 Hawai'i at 215, 216 P.3d at 1238. The person proffering such foundational testimony should have personal knowledge of the manufacturer's recommendations for testing of the laser gun and of the laser gun testing according to said recommendations to overcome hearsay concerns. See Assaye, 121 Hawai'i at 213, 216 P.3d at 1236 (analyzing the police officer's testimony consistent with State v. Manewa, 115 Hawai'i 343, 354, 167 P.3d 336, 347 (2007), where the "expert's 'personal knowledge' that was adduced through his testimony at trial was sufficient 'to establish that the [gas chromatograph mass spectrometers (GCMS)] were in proper working condition'" (quoting Manewa, 115 Hawai'i at 354, 167 P.3d at 347)).

With the foregoing principles in mind, evidence in the instant case reflected the following. As to training on the laser gun and personal knowledge of the manufacturer's recommended procedures in that regard, Officer Sepulveda, a police officer for five-and-a-half years with the Honolulu Police Department had been trained to use the LTI Ultralyte 20-20 laser device for "eight hours" in "October, 2006", which included "class work, going over the operator's manual, as well as hands-on time with the laser itself, practical time" on the Ultralyte.

2

Officer Sepulveda confirmed that during training he was provided with a training manual, which he acknowledged was provided by Laser Technology, Incorporated, the manufacturer of the LTI 20-20, which "says Operator's Manual, LTI 20-20 Operator's Manual" although he later agreed that the manual may also say "Honolulu Police Department" on it or have an HPD logo on it and could not definitely say that the manual was not written or compiled by HPD. Officer Sepulveda also confirmed that in his training, he was taught tests recommended by the manufacturer to determine whether the laser was working properly. Officer Sepulveda also testified, as to review of the manual, that he had "glanced at it many times since 2006."

Evidence from Officer Sepulveda's testimony described four tests for the laser gun--the self test, display test, scope alignment test, and the calibration or delta distance test--and confirmed that he performed these four tests on the laser gun on July 1, 2010, and that the results of the tests indicated that the laser was operating correctly. Officer Sepulveda further acknowledged that if the device was not functioning properly, he "would have took [sic] it in and then notified the arsenal sergeant and got a different machine, tested it, and made sure it was working properly." Although Officer Sepulveda acknowledged that he does not know whether the instrument was maintained on a daily basis, as indicated above, he testified as to his training on testing and use of the laser device in accordance with the manufacturer's recommended procedures, and that his testing of the device on the date of the incident, consistent with those procedures, indicated that the laser device was functioning properly.

In light of the foregoing, Officer Sepulveda's testimony was sufficient to establish that "the nature and extent of [Officer Sepulveda's] training in the operation of a laser gun meets the requirements indicated by the manufacturer." Assaye, 121 Hawai'i at 215, 216 P.3d at 1238. It also appears that Officer Sepulveda's testimony is consistent with the personal

3

knowledge of the Manewa chemist who testified that he tested the device and determined that "the parameters are within manufacturer's specifications[,]" and that "[he] would not have used any of the instruments if they were not in proper working condition in that particular days [sic]," Manewa, 115 Hawai'i at 354, 167 P.3d at 347 (internal quotation marks omitted), upon which the Assaye court relied in stating that the "expert's 'personal knowledge' that was adduced through his testimony at trial was sufficient 'to establish that the GCMSs were in proper working condition.'" 121 Hawai'i at 213, 216 P.3d at 1236 (quoting Manewa, 115 Hawai'i at 354, 167 P.3d at 347).

Although Apollonio cites to the Assaye concurring opinion in arguing that evidence must be presented to "show that the instrument has been inspected and serviced as required by the manufacturer[,]" as discussed above, where evidence of the manufacturer's recommended procedures exists by means of the officer's personal knowledge of the contents of the manual reflecting those recommended procedures, the Assaye court found no hearsay violation. See Assaye, 121 Hawai'i at 213-14, 216 P.3d at 1236-37 (in part quoting Manewa, 115 Hawai'i at 354, 167 P.3d at 347, and in part citing cases from other jurisdictions that involved testing of the laser in accordance with procedures recommended by the manufacturer). Moreover, within its calibration, the Assaye court discussed evidence of accepted procedures and cited with approval cases from other jurisdictions that involved testing of the laser in accordance with procedures recommended by the manufacturer. Assaye, 121 Hawai'i at 213-14, 216 P.3d at 1236-37. This appears to reflect that the Assaye court required that, to overcome inadmissible hearsay as to calibration--similar to other foundational evidence regarding proper operation of the laser gun--evidence must be presented as to the manufacturer's accepted procedures for testing of the laser to ensure proper operation, and that the laser was tested in accordance with such procedures. However, the Assaye majority

4

did not require any further showing of inspection and service as required by the manufacturer.

Consequently, reviewing the determination of foundation for abuse of discretion, Assaye, 121 Hawai'i at 210, 216 P.3d at 1233, in the light most favorable to the prosecution, State v. Hicks, 113 Hawai'i 60, 69, 148 P.3d 493, 502 (2006) (quoting State v. Maldonado, 108 Hawai'i 436, 442, 121 P.3d 901, 907 (2005)), Apollonio's first point that the district court erred in admitting the laser gun reading because of insufficient foundation as to training, testing, and operation of the laser consistent with the manufacturer's recommended procedures and was found to be working properly and second point alleging insufficient foundation of inspection and servicing as required by the manufacturer cannot be sustained. Based on the foregoing, therefore,

IT IS HEREBY ORDERED THAT the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on August 23, 2011 in the District Court of the First Circuit, Wahiawā Division, is affirmed.

DATED: Honolulu, Hawai'i, July 16, 2012.

On the briefs:

Ivy Y.E. Kim,
Deputy Public Defender,
for Defendant-Appellant.

Presiding Judge

Brandon H. Ito,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Associate Judge

Associate Judge